# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RACHIL J. STAPLETON, | : | |
| Plaintiff, | : | |
| | | Case No. 3:07CV0192 |
| vs. | : | |
| | | District Judge Walter H. Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Plaintiff Rachil J. Stapleton suffered numerous injuries in car accident in 2000 including pneumothorax, injured spleen, pelvic fracture, rib fractures, scapula fracture, and a closed head injury. (Tr. 421-36).  These injuries caused her to stop working on the day of the accident, September 18, 2000, and her employment was thereafter terminated. (Tr. 141).  She turned to the Social Security Administration for assistance on October 24, 2002 by filing applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).

After various administrative proceedings, Administrative Law Judge (ALJ) James

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

I.K. Knapp found that Plaintiff was not under a disability and therefore not eligible to receive DIB or SSI. (Tr. 37).

The ALJ's nondisability determination and the resulting denial of benefits ultimately became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Specific Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), the administrative record, and the record as a whole.

Plaintiff seeks reversal of the ALJ's decision and a remand of this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II. FACTUAL BACKGROUND

### A. **Plaintiff And Her Testimony**

Plaintiff has a high school equivalency education. (Tr. 36, 51). She has worked as a nurses aide, a receptionist, and a tax preparer. (Tr. 156). Her age at the time of the ALJ's decision placed her in the category of a "younger person" for purposes of resolving her DIB and SSI applications. *See* Tr. 36; *see* 20 C.F.R. §404.1563(c).

Plaintiff testified during the ALJ's hearing that since being injured in the car accident, she had gained approximately 20-30 pounds. (Tr. 50). At the time of the hearing she weighed 263 pounds. *Id.* The injuries from her accident left her unconscious

for about five days. (Tr. 53). After she became conscious, she remained in the hospital for two-to-three weeks. (Tr. 53). She then spent three weeks in an inpatient skilled nursing facility, *see* Doc. #7 at 14, followed by three months on home health care receiving physical and occupational therapy. (Tr. 54). She was able to walk with a cane at the time her home therapy ended.

Her main health problem concerns pain in her lower back. Following surgery in September 2003, her back pain improved. (Tr. 54). But after the surgery she fell twice, the second time reinjuring her back. She testified, "it was almost like it undid what the surgery did." (Tr. 54). Plaintiff has had intermittent daily low back pain since. Id. She has a TENS Unit and takes Vicodin and Advil to help reduce her pain. (Tr. 55). Plaitniff also has constant knee pain and occasional right shoulder pain. She started using a cane six weeks before the hearing because of the increase in knee pain. (Tr. 55). She also has high blood pressure, asthma, and acid reflux. (Tr. 56).

Plaintiff estimated she could lift about 10 pounds, stand for 10 minutes, and sit for 30 minutes at a time before she has to get up to relieve the stiffness. (Tr. 65). She thought she could walk one-quarter of a mile (Tr. 64), which takes her about 20 minutes. (Tr. 67). Three weeks before the ALJ's hearing she went walking but her knees hurt afterward. (Tr. 65-66).

Plaintiff also explained that she has problems with anxiety. She testified, "I start getting really nervous, and my heart feels like it is going to come out of my mouth up through my throat. I am nauseated sometimes." (Tr. 57). Whenever she is in a social

situation, she gets dizzy, lightheaded and starts staggering. *Id*. Three months before the hearing, she started mental health counseling. *Id*. She had been on medication for anxiety since the car accident. (Tr. 58).

Plaintiff testified that she could not drive for approximately eight months after the accident. She had resumed driving but still experiences anxiety. She typically drives about 5 days a week for no longer than 25 minutes. (Tr. 59).

### B. Medical Source Opinions

Plaintiff relies on the opinion of her long-term primary care physician, Dr. Spagnola. Plaintiff saw Dr. Spagnola for routine health concerns and for accident related issues. (Tr. 364-84).

Dr. Spagnola wrote a letter on October 29, 2002, stating that Plaintiff "continues to have persistent pain resulting from multiple fractures suffered in a very serious automobile accident in September 2000. In addition to this, she has recently been treated for carcinoma... As a result of the mentioned conditions and fibromyalgia, [she] also requires treatment for depression." (Tr. 363). Dr. Spagnola opined that Plaintiff was "disabled from seeking any gainful employment." (Tr. 363).

In April 2003, Dr. Spagnola completed a questionnaire noting that since the accident, Plaintiff suffered from chronic anxiety and depression; fear of getting out, especially driving; and chronic chest wall pain, back pain, and fatigue. (Tr. 225).

On January 16, 2004, Dr. Spagnola completed a medical assessment of ability to do work-related activities form. (Tr. 358-62). He concluded that Plaintiff was unable to

4

perform medium, light, or sedentary work. (Tr. 362). He also indicated that Plaintiff could not lift or carry more than 11-20 pounds occasionally and 5 pounds frequently; she could not stand or walk more than 45 minutes at a time and no more than 2 hours in an eight hour workday; she should never climb; she should only occasionally balance, stoop, crouch, kneel, or crawl; and her ability to reach and push/pull was also limited. (Tr. 359-60).

      Plaintiff also relies on the opinion of Aivars Vitols, D.O., an orthopedist, who performed a consultative examination in May 2004. (Tr. 385-96). At the examination, Plaintiff reported lower back, leg, right ankle, bilateral knee (right more than left), and right shoulder pain. Upon examination, Plaintiff had a slightly antalgic gait but did not need any assistive devices for ambulation She had moderate myospasm throughout her paravertebral musculature, tenderness in her sacroiliac (SI) joint, an inability to fully squat. She had positive bilateral straight leg raising at 75 degrees. She could heel and toe walk with significant difficulty. She had right shoulder tenderness, decreased strength, impingement signs, crepitus, and a restricted range of motion. Plaintiff had bilateral knee tenderness, right more than left, and right ankle tenderness with restricted range of motion. Dr. Vitols diagnosed Plaintiff with a post laminectomy syndrome, right shoulder tendonitis, impingement syndrome and adhesive capsulitis, depressive disorder, hypertension, obesity, and traumatic arthritis of the right ankle. He opined that Plaintiff could occasionally lift or carry no more than five pounds and frequently lift or carry up to two pounds. Plaintiff could not stand or walk more than 20 minutes at a time and no more

than two hours in an eight-hour workday and could not sit more than 30 minutes at a time and no more than four hours in an eight-hour workday. Plaintiff should never climb, balance, stoop, crouch, kneel or crawl. *Id*. Her ability to reach, push/pull, work at heights around moving machinery, and vibration was also limited.

Dr. Vitols summarized that Plaintiff could perform part-time, light-duty work, but only if she frequently changed positions. He opined that her impairments/limitations had been present since September 18, 2000 and that they should be considered permanent. *Id.*

The ALJ relied on the opinions of Dr. Miller, who examined Plaintiff on one occasion in July 2004 for the Ohio Bureau of Disability Determinations (Ohio BDD). (Tr. 437-47). Dr. Miller assessed Plaintiff as having degenerative joint disease in her lumbar spine with L4-L5 disc protrusion. (Tr. 438). He concluded, in part, that Plaintiff could lift up to 30 pounds frequently and had no limitation on her ability to sit or stand/walk. (Tr. 445).

## III. ADMINISTRATIVE REVIEW

### A. "Disability" Defined And The ALJ's Sequential Evaluation

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or he is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 29-33; *see also* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).[2] Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

---

[2] The remaining citations will identify the pertinent SSI Regulations with full knowledge of the corresponding DIB Regulations. Plaintiff met the insured-status requirement for DIB eligibility from October 10, 2001 through December 2006. *See Colvin*, 475 F.3d at 730; *see also* Tr. 31.

### B. The ALJ's Decision

In the present case the ALJ found at Step 2 that Plaintiff had the following severe impairments: lumbar degenerative disc disease with exogenous obesity, generalized anxiety disorder, and depressive disorder not otherwise specified. (Tr. 36).

The ALJ determined at Step 3 that the severity of these impairments does not meet or equal one in the Listings. (Tr. 36).

At Step 4 the ALJ found that Plaintiff could perform sedentary, light, or medium exertional work subject to the following limitations:

> The claimant lacks the residual functional capacity to: (1) lift more than ten pounds frequently or thirty pounds occasionally; (2) crawl, stoop, kneel, or crouch more than occasionally; (3) climb ladders or scaffolds; (4) work at unprotected heights or around moving machinery; (5) interact with co-workers more than occasionally; or (6) perform other than low stress jobs (i.e., no job involving above-average pressure for production, work that is other than routine in nature, or work that is hazardous).

(Tr. 31, 36).

This assessment of Plaintiff's residual functional capacity, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and hence not eligible for DIB or SSI. (Tr. 36-37).

### IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742,

745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance...*" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994). And the required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir.2004)).

## V. DISCUSSION

### A. The Parties' Contentions

Plaintiff argues that the ALJ erred in his evaluation of the opinions provided by her long-term treating physician, Dr. Spagnola. To her credit, Plaintiff does not specifically contend that the ALJ failed to apply the correct legal criteria under the treating physician rule, *see infra*, §V(B), because the ALJ's decision described and applied this criteria to Dr. Spagnola's opinions. *See* Tr. 32. Plaintiff argues that the ALJ erred by not continuing to weigh Dr. Spagnola's opinions under the required factors after determining that the treating physician rule did not apply. Plaintiff emphasizes that Dr. Spagnola's opinions were consistent with those provided Dr. Vitols and supported by the CT scan showing her back condition appeared essentially the same after her surgery. Plaintiff further contends that the ALJ erred by not weighing Dr. Vitols' opinions under any of the required regulatory factors, and he similarly failed to assess the other medical source opinions as required by the Regulations.

The Commissioner maintains that the ALJ evaluated all the evidence, including the medical source opinions, and explicitly found that he could not give controlling or even great weight to the opinions of Drs. Spagnola and Vitols because their opinions were not supported by clinical or diagnostic findings and were otherwise inconsistent with the record evidence.

### B. Medical Source Opinions and the ALJ's Decision

The treating physician rule, when applicable, requires ALJs to place controlling

weight on a treating physician's opinion rather than favoring the opinion of a nonexamining medical advisor or an examining physician who saw a claimant only once or a medical advisor who testified before the ALJ. *Wilson*, 378 F.3d at 544; *see Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §404.1527(d)(2), (e), (f). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. *Wilson*, 378 F.3d at 544; *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §404.1527(d)(2).

If a treating physician's opinion is not given controlling weight, then it must be weighed against other medical source opinions under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §404.1527(d)(2)).

In general, more weight is given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. §404.1527(d)(1). However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views nonexamining sources "as highly

qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, the opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. §404.1572(d), (f).

    **C.**    <u>**Analysis**</u>

Plaintiff is correct to the extent she argues that the ALJ did not separately identify or describe the continued-weighing requirement mandated by the Regulations and did not describe any of the remaining factors – supportability, consistency, and specialization – required by the Regulations. *See* 20 C.F.R.. §404.1527(d)(3)-(6); *see also Wilson*, 378 F.3d at 544. Absent some language identifying the remaining regulatory factors, the ALJ's decision must be further studied to determine what legal standards he applied after finding that the treating physician rule did not apply to Dr. Spagnola's opinions.

The ALJ's decision does not plainly indicate that he considered the remaining regulatory factors – supportability, consistency, specialization – when weighing Dr. Spagnola's opinions. *See* Tr. 32. The ALJ did, however, reject the opinions of both Drs. Spagnola and Vitols by relying on the contrary opinion of Dr. Miller, a one-time examining physician for the Ohio BDD. The problem with the ALJ's analysis is that he did not weigh Dr. Miller's opinions under any regulatory factor required by the Regulations. *See* Tr. 32-33. This was contrary to the Regulations, which require ALJs to weigh the opinions of non-treating medical sources under certain factors – supportability,

consistency, specialization, *etc*. – described in 20 C.F.R. §404.1527(d). The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see also* 20 C.F.R. §404.1527(f)(ii) (factors apply to opinions of state agency consultants); §404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same). Social Security Ruling 96-2p provides ALJs with definitive guidance on how to apply these factors:

> The Regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.
>
> For this reason, the opinions of State agency medical and psychological consultants ... can be given weight only insofar as they are supported by evidence in the case record, considering such factors as ... supportability..., consistency..., and any explanation for the opinion provided by the State agency medical or psychological consultant.... The adjudicator must also consider all other facts that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

1996 WL 374188 at *4. The ALJ thus erred by fully crediting Dr. Miller's opinion that Plaintiff could perform medium exertional work with certain limitations and by relying on Dr. Miller's opinion – without applying the regulatory factors – to reject the opinions of Drs. Spagnola and Vitols. *See* Tr. 32-33.

There remains the possibility that the ALJ's error was harmless, *see Bowen*, 478

F.3d at 747-49, an issue neither party specifically addresses.  The Commissioner, finding no error in the ALJ's decision, argues that objective medical evidence did not support the opinions of Drs. Spagnola or Vitols, and given the lack of such evidence, the ALJ properly relied on Dr. Miller's opinion.   The harmless-error issue, then, is whether the ALJ's decision, the evidence of record, or the Commissioner's arguments provide a sufficient basis for overlooking the ALJ's error.  *See Bowen*, 478 F.3d at 747-48; *see also Wilson*, 378 F.3d at 546-47.

It is highly doubtful that the Commissioner's *post-hoc* rationalizations can be the sole basis to affirm an ALJ's decision when the ALJ has failed to weigh a treating medical source opinion as required by the Regulations.  "A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.   '[A] procedural error is not made harmless simply because the [aggrieved party] appear to have had little chance of success on the merits anyway.'  To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with §1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory.  The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action ... found to be ... without observance of procedure required by law.'"  *Wilson*, 378 F.3d at 546 (internal citations omitted).

A review of the opinions provided by Drs. Spagnola and Vitols does not reveal that their opinions were wholly unsupported or otherwise "so patently deficient that the Commissioner could not possibly credit..." them.  *Wilson*, 378 F.3d at 547.  Plaintiff, moreover, correctly relies on the results of a lumbar CT scan performed eight months after her back surgery, which showed a "posterior disc protrusion at L4-L5 with mild to moderate canal stenosis and neural foraminal narrowing bilaterally." (Tr. 398).  Those findings were thought to be "probably similar" to Plaintiff's pre-surgery MRI on June 12, 2003. (Tr. 398).  Dr. Vitols' examination found "moderate myospasm" throughout the paravertebral musculature (right and left), left sacroiliac joint was "exquisitely tender to palpation," an inability to squat fully, positive bilateral straight leg raises, and a restricted range of motion of the lumbar spine.  *See* Tr. 388-89.  Dr. Vitols observed that Plaintiff could only perform "heel and toe walking with significant difficulty." (Tr. 389).  He noted that Plaintiff had bilateral knee tenderness, right more than left, and right ankle tenderness with restricted range of motion.  *Id*.  And, Dr. Vitols found that Plaintiff had right shoulder limitations including signs of impingement.  *See* Tr. 388.  Consistent with Dr. Spagnola, Dr. Vitols did not think that Plaitniff could stand or walk for more than two hours a day or sit more than four hours a day.  (Tr. 393).  And consistent with Dr. Spagnola, Dr. Vitols concluded that Plaintiff was "not capable of performing work on a regular sustained 8-hour basis." (Tr. 391).

Even accepting the Commissioner's contentions that the record contained substantial evidence supporting the ALJ's conclusions, that evidence did not relieve the

ALJ of his duty to evaluate the medical source opinions – particularly Dr. Miller's opinions – under the factors required by the Regulations. "Even if supported by substantial evidence..., a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 476 (citing *Wilson*, 378 F.3d at 546-47)(other citation omitted). Consequently, the ALJ's error were not harmless.

Accordingly, Plaintiff's Statement of Errors is well taken.

**VI.    REMAND IS WARRANTED**

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

An evidentiary conflict exists between Dr. Miller's opinions and those of Drs. Spagnola and Vitols, which has not been administratively resolved under the standards

required by the Regulations. Given this conflict, judicial award of benefits is unwarranted because the evidence of Plaintiff's disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration for further proceedings pursuant to Sentence Four of §405(g) due to the ALJ's failure to weigh the medical source opinions of record as required by the Regulations. On remand, the Commissioner and the ALJ should be directed to (1) re-evaluate the medical source opinions under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; (2) explain the evaluation of the medical sources as required by the Regulations, Rulings, and case law; and (3) determine anew whether is under a "disability.

Accordingly, the case must be remanded to the Commissioner and the ALJ under Sentence Four of 42 U.S.C. §405(g) for further proceedings consistent with this Report and Recommendations.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Rachil J. Stapleton was under a "disability" within the meaning of the Social Security Act during the period of time at issue;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration

consistent with this Report; and

4. The case be terminated on the docket of this Court.

August 5, 2008

                <u>s/ Sharon L. Ovington</u>
                Sharon L. Ovington
              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).